IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GENNARI CONSULTING, INC.,
 *Plaintiff*,

v.

           Civil Action No. ELH-19-1851

WELLINGTON CORP., LLC, *et al.*,
 *Defendants*.

## MEMORANDUM OPINION

  This Memorandum Opinion concerns a suit filed by Gennari Consulting, Inc. ("Gennari"), plaintiff, on June 24, 2019, against defendants Wellington Corp., LLC ("Wellington") and its sole owner, Robert Kundel, Jr.  ECF 1 (the "Complaint"); *id.* ¶ 8.  Gennari alleges that defendants breached a profit-sharing agreement with Gennari by terminating the agreement without cause via an email to Gennari's owner, Matthew Gennari ("Mr. Gennari").  *Id.* ¶¶ 6, 26.  Further, plaintiff asserts that defendants sought to "cut Gennari off from all customers and vendors, with respect to the sale of the Restorer product, which is the subject of this dispute."  ECF 1 at 1.[1]

  The Complaint, which is supported by several exhibits, contains nine counts, as follows: "Breach of Contract" against Wellington (Count I); "Civil Conspiracy" against Wellington and Kundel (Count II); "Unjust Enrichment" against Wellington (Count III); "Tortious Interference with Contractual and Economic Relationship" against Wellington and Kundel (Count IV); "Conversion" against Wellington and Kundel (Count V); "Fraud" against Wellington and Kundel (Count VI); "Defamation" against Kundel (Count VII); "Injurious Falsehood" against Wellington

---

[1] The Restorer was previously called the "Rolabrader," as discussed, *infra*.  ECF 1, ¶ 18.  .

and Kundel (Count VIII); and "Tortious Interference with Prospective Advantage" against Wellington and Kundel (Count IX). Plaintiff seeks a total of $81,000,000 in compensatory damages, $105,000,000 in punitive damages, as well as attorneys' fees, interest, and costs. *Id.* ¶¶ 28–75.

Subject matter jurisdiction is premised on diversity of citizenship. *See id.* ¶ 4; 28 U.S.C. § 1332. Defendants have moved to dismiss. ECF 4. Pursuant to Fed. R. Civ. P. 12(b)(2), they claim lack of personal jurisdiction. And, pursuant to Fed. R. Civ. P. 12(b)(3), they claim improper venue. The motion is supported by a memorandum of law (ECF 4-1) (collectively, the "Motion"), and the affidavit of Kundel (ECF 4-2). Gennari opposes the Motion (ECF 7, the "Opposition"), supported by the affidavit of Mr. Gennari. ECF 7-1. With their reply (ECF 10, the "Reply"), defendants submitted another affidavit from Kundel. ECF 10-1.

Upon review of the submissions, this Court issued an Order asking the parties to address the possible transfer of this case to the Northern District of Ohio (ECF 12), where a related suit, initiated by Wellington, is now pending. *See* ECF 11. Wellington's response is docketed at ECF 13 (the "Wellington Memoradum"). It is supported by several exhibits. ECF 13-1 to ECF 13-3. Gennari's response is docketed at ECF 14 (the "Gennari Memorandum"), along with one exhibit. ECF 14-1.

No hearing is necessary to resolve the Motion. See Local Rule 105.6. For the reasons that follow, I shall transfer the case to the Northern District of Ohio, pursuant to 28 U.S.C. § 1404(a). Therefore, I shall deny the Motion as moot.

## I.    Background[2]

Gennari is a Maryland corporation with its principal place of business in Cockeysville, Maryland.  ECF 1, ¶ 2.[3]  Wellington is an Ohio limited liability corporation with its principal place of business in Vienna, Ohio.  *Id.* ¶ 3.  Kundel is the sole shareholder of Wellington and its principal officer.  *Id.*[4]  He is a citizen of Ohio.  ECF 4-2, ¶¶ 1, 4.

Plaintiff alleges that Wellington does business throughout the United States and "[w]orldwide."  ECF 1, ¶ 3.  Moreover, Gennari claims that this Court has subject matter jurisdiction, and that venue is proper in this District, because the contract in issue was executed in Maryland.  *Id.* ¶ 5.  Gennari also avers that "the course of dealings and business occurred in Maryland, and the acts complained of by the Plaintiff arose and caused damage to the Plaintiff in Maryland. . . ."  *Id.*

In 2010, Mr. Gennari, a power tool executive, formed Gennari and began working as a paid consultant with Jinding Electric Tool Company ("Jinding"), located in Changzhou, China.  *Id.* ¶¶ 6, 7.  Gennari manufactures for Jinding "over one hundred million dollars in products sold globally to Stanley Black & Decker" ("SBD").  *Id.* at 7.  Through May 2019, Gennari worked as a consultant for Jinding "with specific directives to grow" Wellington's power tool business, until defendants caused Gennari's "relationship [with Jinding] to end."  *Id.*

---

[2] The factual summary is derived primarily from the allegations in the Complaint and the exhibits attached thereto.  It also includes information contained in the court filings from the Ohio litigation, discussed *infra*.

[3] In multiple places in the Complaint, plaintiff misspells Cockeysville as "Cockysville."  *See*, *e.g.*, ECF 1 at 1; *id.* ¶ 2.

[4] Two paragraphs are numbered as "3."  *See* ECF 1 at 2.  This citation is to the second paragraph numbered "3."

Plaintiff recounts that defendants had invented "a crude non commercially viable prototype, non-sellable power tool known as the Rola-brader." *Id.* ¶ 9. In February 2015, Wellington "reached out to Gennari via email at the encouragement of John Cunningham from SBD who was the President of consumer products of SBD and a lifelong friend and colleague of [Mr.] Gennari," with the goal of developing the "Rolabrader." *Id.* ¶ 11. Thereafter, Gennari sought "to get the product designed, manufactured and sold globally." *Id.* ¶ 12. Gennari introduced the Rolabrader to Jinding in February 2015 and "drew up a Joint Development Agreement. . . between Wellington and Jinding." *Id.* ¶ 13; *see* ECF 1-2 (the "Agreement").[5] Kundel signed the Agreement for Wellington on March 12, 2015, and Gennari signed it on May 14, 2015. ECF 1, ¶ 13.[6]

The Agreement does not specify where it was executed. Gennari alleges that he executed the Agreement in Maryland. ECF 7-1 ¶ 11. Kundel avers that he executed the Agreement in Ohio. ECF 4-2, ¶ 15. And, it contains an Ohio choice-of-law provision. ECF 1-2 at 3. The provision states, *id.* ¶ 10: "This agreement will be governed in all respects by the law of the State of Ohio."

Under the Agreement, Wellington is required to pay 50% of all design and tooling fees. *Id.* ¶ 13. However, plaintiff claims Wellington has failed to do so. *Id.* Moreover, Wellington "contributed no capital investment in production inventory," which is "a value of approximately" $1,000,000. *Id.* ¶ 14. According to Gennari, it negotiated favorable terms with Jinding to cover the project's costs because Wellington had no funding. *Id.*

Gennari also claims that it "alone united the SBD sales, marketing and engineering teams into the project." *Id.* ¶ 15. Further, Gennari maintains that it "alone managed and perfected the

---

[5] The document is actually titled "Joint Collaboration Agreement."

[6] The Agreement reflects that it was signed by Kundel on April 3, 2015, and on April 5, 2015, by Mr. Gennari for Jinding. The discrepancy is not material.

design and product development process between Jinding and SBD in both China and Maryland, USA." *Id.* Gennari allegedly made the first presentation of the Rolabrader to SBD on or about April 11, 2016. *Id.* ¶ 16. The plan was for Jinding to manufacture the product and for "SBD to source it and sell it globally." *Id.* Wellington was to receive a 10% royalty. *Id.*

In addition, Gennari alleges that it created a licensing agreement "whereby Wellington would license the Porter Cable brand from SBD and pay them a royalty. In turn, Wellington would be responsible for all distribution." *Id.*[7] Gennari claims that it "alone secured a vendor, Lowes. . . ." *Id.* ¶ 17. Gennari also claims that it "created the Restorer brand name" because Lowes did not approve of "the Rolabrader name." *Id.* ¶ 18. Further, plaintiff alleges that Wellington "later fraudulently trademarked the Restorer brand solely in its own name without giving joint credit to Gennari." *Id.* According to plaintiff, Gennari enlisted other companies to "handle the e-commerce sales of the Restorer. . . ." *Id.* ¶ 19.

In August 2016, Wellington and Gennari entered into a profit-sharing agreement, by which Wellington was to receive 65% of the profits and pay 65% of expenses, and Gennari's share would be 35%. *Id.* ¶ 20; see ECF 1-1 (the "Profit Agreement"). The Profit Agreement was to remain in effect for the duration of the licensing agreement "with SBD for the Porter-Cable and Black & Decker brands providing that Matthew Gennari is openly and actively managing these . . . accounts." ECF 1-1.

The Profit Agreement contains no choice of law provision, nor does it specify where the contract was to be performed. *See id.* Gennari contends that the two companies agreed to split the workload at the same percentages as the profits and expenses. ECF 1, ¶ 22. Gennari also alleges that it secured additional retailers for the Restorer, including Home Depot, Walmart, and Amazon

---

[7] The parties did not submit a copy of this agreement.

USA. *Id.* ¶ 21. Moreover, plaintiff "continued to manage product development, marketing, finance, supply chain management, sourcing, commercial execution and planning of the Restorer project." *Id.* ¶ 22.

According to plaintiff, Kundel agreed to devote all of his time to the Restorer project. *Id.* ¶ 20. Yet, he continued to work on unrelated business matters. *Id.* ¶¶ 20, 22.

Gennari contends that in May 2017, it "reached out to Wellington concerning the inequity of workload division," because plaintiff was "doing 95% of the work rather than the agreed upon 35%." *Id.* ¶ 23. Gennari claims that it "built the Restorer project from the ground up, with little to no involvement from Wellington. Wellington and Kundel had little to no interaction with the vendors, suppliers and manufacturers of the Restorer project; never met with Jinding. . .and only made one trip to SBD." *Id.* Revenue "doubled." *Id.* ¶ 24. Further, Gennari contends that in April 2019, it "received confirmation from Lowe's" as to an agreement for quantities of product recommended by Gennari. *Id.* ¶ 25. But, it "was forced to create and present the [brand transition plan] on its own, to the supply base without the help and assistance Wellington had promised." *Id.* ¶ 25.

On May 10, 2019, Mr. Gennari received an "unexpected" email from Wellington and Kundel (ECF 1-3 at 2), "unilaterally terminating their long-standing profit-sharing agreement, without notice, without cause, and in breach of the profit-sharing agreement for the sole purpose of diverting funds rightfully due and owing to Gennari." *Id.* ¶ 26. According to plaintiff, the email was defamatory, and was sent to Gennari's business contacts "for the sole purpose of unlawfully destroying Gennari's business contacts and eliminating it from the Restorer project so that Wellington and Kundel would not have to pay Gennari its 35% of profits." *Id.*

In the email, Kundel stated that his intent was to "raise funds to build the pastoral retreat center and be able to pass down our company to our son," and he needed his company "to be a transferrable entity." ECF 1-3 at 2. As a result, he was "terminating [the] contract between Wellington Corp LLC and Gennari Consulting. . . ." *Id.* Notably, Kundel said: "[W]e can no longer have financial ties between us and our companies . . . [Wellington] will be working directly with Jinding and all accounts." *Id.*

Wellington and Kundel allegedly withheld receivables and "directed all parties involved to disengage with Gennari. . . ." ECF 1, ¶ 27. They also allegedly "refused to release funds belonging to Gennari" and instructed other parties "to remove Gennari's access to data regarding the sales and expenses of the Restorer project." *Id.*

In addition to claiming breach of contract, Gennari alleges that defendants engaged in defamatory and tortious conduct. According to plaintiff, defendants "purposefully and maliciously sabotag[ed] Plaintiffs [sic] business and economic relationships." ECF 1, ¶ 47(a). Further, defendants tortiously interfered with plaintiff's business by "[d]efaming and providing false information about Gennari to Vendors, customers and manufacturers about his position, employment and ability to actively participate in the business, for the sole reason of damaging Gennari's business and stealing business from Gennari for personal financial gain," and making "defamatory statements about Gennari's employment status, financial abilities, business capacity and future viability, to multiple individuals and businesses. . . ." *Id.* ¶¶ 47, 59.

This suit followed on June 24, 2019. Gennari attached to its Complaint a copy of the Profit Agreement between itself and Wellington/Kundel (ECF 1-1), the Agreement between Wellington/Kundel and Jinding (ECF 1-2), and an email dated May 10, 2019, from Mr. Gennari

to Kundel, in reply to the email sent on May 10, 2019, from Kundel to Mr. Gennari, terminating the Profit Agreement. ECF 1-3.

Of import here, Wellington sued Gennari and Mr. Gennari in an Ohio state court on June 3, 2019. ECF 4-2; *see also* ECF 13-1. The suit alleges breach of contract by Gennari with respect to the Profit Agreement, as well as tortious interference with a business relationship. *Id.* As noted, Gennari filed the case sub judice on June 24, 2019. And, one day later, on June 25, 2019, Gennari and Mr. Gennari removed the Ohio state case to the United States District Court for the Northern District of Ohio.[8] *Id.* ¶ 21; *see Wellington Corp., LLC v. Gennari Consulting Inc., et al.*, Case No. 4:19-cv-01464.[9] Notably, on August 12, 2019, the Ohio federal court denied the Gennaris' motion to dismiss for lack of personal jurisdiction and improper venue. ECF 11-1 at 13.

In its answer to the Ohio suit, Gennari raised, among others, the following affirmative defenses: "Wellington's claims are barred, in whole or in part, by Gennari Consulting's compliance with contractual obligations"; "Wellington's claims are barred, in whole or in part, by Wellington's failure to meet its conditions precedent for a claim on [sic] breach of contract"; "Wellington's claims are barred by Wellington's own breach of the [Profit] Agreement"; "Wellington's claims are barred by its own comparative and/or contributory negligence"; and

---

[8] A court may take judicial notice of matters of public record that constitute adjudicative facts. Fed. R. Evid. 201(b)(2); *Goldfarb v. Mayor and City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015). "Adjudicative facts are simply the facts of the particular case." Fed. R. Evid. 201, Advisory Committee's note. *See* Fed. R. Evid. 201(b) (stating, in relevant part, that a "court may judicially notice a fact that is not subject to reasonable dispute" because it "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *see also Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) (noting that "[t]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records").

[9] In this case, Gennari sued Wellington and Kundel (ECF 1 at 1); in the Ohio case, Wellington sued Gennari and Mr. Gennari (ECF 4-2, ¶ 20). Because Kundel is the sole member of Wellington (ECF 4-2, ¶ 3), and Mr. Gennari is the owner of Gennari (ECF 1, ¶ 6), both lawsuits seek to hold the corporations liable for the actions of their sole shareholders.

"Wellington's claims are barred, in whole or in part, by the applicable doctrines of waiver, laches, unclean hands, accord and satisfaction, and/or estoppel." ECF 13-3 at 7–8.

Additional facts are discussed, *infra*.

## II. Discussion

### A.

Pursuant to Fed. R. Civ. P. 12(b)(2), defendants "seek dismissal of Plaintiff's claims for lack of personal jurisdiction. . . ." ECF 13 at 1. They argue that neither Wellington nor Kundel, "nor the alleged acts giving rise to Plaintiff's claims have any connection to Maryland." ECF 4 at 1. In addition, defendants claim venue is improper in Maryland under 28 U.S.C. § 1391(b) and Fed. R. Civ. P. 12(b)(3), because "Defendants are not residents [of Maryland] and a substantial part of the events or omissions giving rise to the claim occurred outside of the district in Ohio." *Id.*

According to Gennari, this Court has personal jurisdiction over defendants because they initiated the parties' business relationship (ECF 7 at 5) and purposefully availed themselves of "the privilege of conducting business in Maryland." *Id.* at 7. Plaintiff also contends that defendants had the "intent and purpose" for Gennari "to conduct activities on behalf of Wellington in Maryland." *Id.* Moreover, plaintiff posits that its claims "arise out of Wellington's activities directed at Maryland because they are related to the Agreement between the parties. . . ." *Id.* at 8. And, Gennari maintains that venue is proper in this District because the Profit Agreement "was drafted, last finalized and executed in the State of Maryland, the course of dealings and business occurred in Maryland, and the acts complained of by the Plaintiff arose and caused damage to the Plaintiff in Maryland, pursuant to 28 U.S.C. § 1391(b)(2)." ECF 1, ¶ 5.

Section 1391 of Title 28 of the United States Code governs "the venue of all civil actions" filed in federal district court. *Id.* § 1391(a). It provides for venue, as follows:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Section 1404(a) of 28 U.S.C. § 1404(a) is also relevant. It states, in part: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." Notably, § 1404(a) "reflects an increased desire to have federal civil suits tried in the federal system at the place called for in the particular case by considerations of convenience and justice." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964). To that end, it helps "to prevent the waste 'of time, energy, and money' and 'to protect litigants, witnesses, and the public against unnecessary inconvenience and expense.'" *Id.* (citation omitted). Ultimately, § 1404(a) "tempers the effects" of the plaintiff's choice of venue. *In re: Volkswagen of Am., Inc.*, 545 F.3d 304, 313 (5th Cir. 2008).

Of relevance here, "it is well established that a federal district court has the power to make a *sua sponte* transfer of venue under 28 U.S.C. § 1404(a) to another district where the case could have been brought. . . ." *Cluck-U Corp., v. Cluck-U Chicken, Inc.*, No. PWG-15-3439, 2016 WL 9526438, at *1 (D.Md. May 27, 2016) (citing *ING Bank N.V. v. Temara*, No. JKB-15-1488, 2016 WL 67254, at *2 (D. Md. Jan. 5, 2016)) (alterations omitted); *see Feller v. Brock*, 802 F.2d 722, 729 n.7 (4th Cir. 1986); Charles A. Wright, Arthur R. Miller, Edward H. Cooper, & Richard D. Freer, *Fed. Prac. & Proc.* § 3844 & n.2 (4th ed. 2013) (citing cases). Whether to transfer is a matter within the district court's discretion. *In re Ralson Purina Co.*, 726 F.2d 1002, 1005 (4th Cir. 1984). However, "the parties deserve an opportunity to be heard before a decision is

rendered." *Feller*, 802 F.2d at 729 n.7 (citing 15 C. Wright, A. Miller, E. Cooper, *Federal Practice and Procedure* § 3844 at 329-30 (1986)).  *See also, e.g.*, *ING Bank N.V.*, 2016 WL 67254, at * 2 ("Before undertaking a *sua sponte* transfer, the Court should notify the parties of its intentions and give them the opportunity to brief the issue.").

Neither party initially requested the transfer of this case to the Northern District of Ohio, where Wellington's suit against Gennari is already pending.  However, both sides were afforded the opportunity to address the possible transfer.  *See* ECF 12; ECF 13; ECF 14.  And, in the event that this Court declines to dismiss plaintiff's claims for lack of personal jurisdiction, defendants now seek transfer to the Northern District of Ohio.  ECF 13 at 3.

Defendants reiterate that Maryland has "no connection with the matter in controversy," other than Gennari's "own convenience." ECF 13 at 6.  Further, defendants note that they executed the Profit Agreement in Ohio.  *Id.*; ECF 4-2, ¶ 13.  In addition, they point out that Gennari claims Wellington breached the Profit Agreement through "various acts and omissions" with non-Maryland entities, such as online retailers, brick and mortar retailers, and warehouses.  ECF 13 at 6.  And, they argue that the allegedly defamatory email sent by Kundel was transmitted from Ohio.  *Id.*  The lack of connection to Maryland, they claim, supports transfer to Ohio.  *Id.*

In its memorandum, plaintiff does not squarely address the issue of transfer.  Rather, Gennari incorporates by reference the arguments from its Opposition, claiming that this Court has personal jurisdiction over the defendants and that venue is proper in this District.  ECF 14 at 3–6.

As noted in *Excel Servs. v. Walker*, AW-09-3128, 2010 WL 1759789 at *2 (D. Md. April 30, 2010), "[t]hough neither the Supreme Court nor the Fourth Circuit have explicitly stated a court may transfer a case under 28 U.S.C. § 1404(a) when venue is proper[ ] but the court lacks personal jurisdiction over a defendant, other courts in this District have found personal jurisdiction

unnecessary under this statute, and the Fourth Circuit has not held otherwise." *Id.*; *see also Harry & Jeanette Weinberg Found. v. ANB Inv. Mgmt. & Trust Co.*, 966 F. Supp. 389, 392 (D. Md. 1997) (transferring case under 28 U.S.C. § 1404(a), despite a lack of personal jurisdiction); *Ulman v. Boulevard Enterprises, Inc.*, 638 F. Supp. 813, 815 (D. Md. 1986) ("Where personal jurisdiction is lacking but venue is present, the original forum court has the authority to transfer pursuant to and in accordance with 28 U.S.C. § 1404(a), provided, of course, that subject matter jurisdiction exists in the original forum court.").

Moreover, of the circuits that have addressed this issue, the majority have concluded that personal jurisdiction is not required for transfer under 28 U.S.C. § 1404(a). *Excel*, 2010 WL 1759789 at *2; *see Muldoon v. Tropitone Furniture Co.*, 1 F.3d 964, 967 (9th Cir. 1993); *Cote v. Wadel*, 796 F.2d 981, 984-85 (7th Cir. 1986); *Bentz v. Recile*, 778 F.2d 1026, 1028 (5th Cir. 1985); *Roofing & Sheet Metal Serv. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 992 n. 16 (11th Cir. 1982). *But see Pittock v. Otis Elevator Co.*, 8 F.3d 325, 329 (6th Cir. 1993) (concluding that only transfer under 28 U.S.C. § 1406(a) is proper when personal jurisdiction is lacking); *Mayo Clinic v. Kaiser*, 383 F.2d 653, 654 (8th Cir. 1967) (same). As a result, in order to transfer this case, I need not first conclude that this Court has personal jurisdiction over the defendants.[10]

## B.

The standard for a § 1404(a) transfer can be distilled, as follows: "(1) the transferee court must be a court in which the action could have been brought initially; (2) the transfer must be

_____

[10] As recently noted by the Fourth Circuit, in a determination that a district court had abused its discretion in assuming jurisdiction under the Declaratory Judgment Act, district courts "may dismiss a case on forum non conveniens grounds, without first addressing personal and subject-matter jurisdiction" because "the Court could first address questions that 'involve[] a deliberate abstention from the exercise of jurisdiction.'" *Trustguard Ins. Co. v. Collins et al.*, 942 F.3d 195, 201 (4th Cir. 2019) (quoting *Sinochem International Co. v. Malaysia International Shipping Corp.*, 549 U.S. 422 (2007)).

convenient to the parties and witnesses; and (3) the transfer must be in the interest of justice." *Dow v. Jones*, 232 F.Supp.2d 491, 499 (D. Md. 2002). The transfer analysis "calls on the district court to weigh in the balance a number of case-specific factors." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). These include: "(1) the weight accorded to plaintiff's choice of venue; (2) witness convenience and access; (3) convenience of the parties; and (4) the interest of justice." *Tr. of the Plumbers and Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th Cir. 2015); *see, e.g.*, *Mamani v. Bustamante*, 547 F. Supp. 2d 465, 469 (D. Md. 2008); *Cross v. Fleet Reserve Ass'n Pension Plan*, 383 F. Supp. 2d 852, 856 (D. Md. 2005); *Lynch v. Vanderhoef Builders*, 237 F. Supp. 2d, 615, 617 (D. Md. 2002).

### 1.

Under 28 U.S.C. § 1404(a), the "preliminary" inquiry focuses on whether the civil action "might have been brought in the destination venue." *In re: Volkswagen*, 545 F.3d at 312 (internal quotations omitted). In order to satisfy that requirement, venue in the transferee court must be proper, and that court must have personal jurisdiction over the defendant. *D2L Ltd. v. Blackboard, Inc.*, 671 F. Supp. 2d 768, 778 (D. Md. 2009).

As noted, Wellington's suit in Ohio involves overlapping issues arising out of the same business relationship at issue in this case. The Ohio federal court determined that it had personal jurisdiction over Gennari and Mr. Gennari. ECF 11-1 as 12. And, it concluded that "venue is properly laid" in Ohio under § 1391(b)(2). *Id.* Therefore, it declined to grant the Gennaris' request to transfer the case to the District of Maryland. *Id.* Because venue is proper in the Northern District of Ohio, and that court has personal jurisdiction over Gennari and Mr. Gennari, this suit could have been brought in the Northern District of Ohio.

**2.**

Gennari chose to bring its suit in the District of Maryland.  ECF 1.  "As a general rule, a plaintiff's 'choice of venue is entitled to substantial weight in determining whether transfer is appropriate.'" *Plumbing Servs., Inc.*, 791 F.3d at 444 (quoting *Bd. of Trs. v. Sullivant Ave. Props., LLC*, 508 F. Supp. 2d 473, 477 (E.D. Va. 1988)); *see also, e.g., Arabian v. Bowen*, 966 F.2d 1441 at *1 (4th Cir. 1992) (per curiam) (table).  Indeed, unless the balance of factors points "strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984); *see Gilbert v. Freshbikes, LLC*, 32 F. Supp. 3d 594, 607 (D. Md. 2014); *Mamani*, 547 F. Supp. 2d. at 469. This is particularly true where "'the chosen forum is the plaintiff's home or bears a substantial relation to the cause of action.'" *comScore, Inc. v. Integral Ad Science, Inc.*, 924 F. Supp. 2d 677, 682 (E.D. Va. 2013) (quoting *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 995 (E.D. Va. 2011)); *see also Rice v. PetEdge, Inc.*, 975 F. Supp. 2d 1364, 1374 (N.D. Ga. 2013) (recognizing that a plaintiff's choice of venue should be afforded substantial deference where "plaintiff has filed suit in his home state"); *Sentry Select Ins. Co. v. McCoy Corp.*, 980 F. Supp. 2d 1072, 1077 (W.D. Wis. 2013) ("Because plaintiff . . . has chosen its home forum in which to litigate, its choice is particularly deserving of deference.").

Although a plaintiff's choice of forum "is ordinarily accorded considerable weight . . . .", *Lynch*, 237 F. Supp. 2d at 617, "that weight is significantly lessened when none of the conduct complained of occurred in the forum selected by the plaintiff and said forum has no connection with the matter in controversy." *Id.*; *see also Bannister v. Wal-Mart Stores E., L.P.*, 843 F. Supp. 2d 610, 615 (E.D.N.C. 2012) ("[T]he deference given to a plaintiff's choice of forum is

proportionate to the relationship between the forum and the cause of action."); *Mamani*, 547 F. Supp. 2d at 473 ("[A] court need not accord the choice as much weight when the 'forum has no connection with the matter in controversy.'") (citation omitted); *Bd. of Trustees v. Sullivant Ave. Properties, LLC*, 508 F. Supp. 2d 473, 477 (E.D. Va. 2007) (observing that the weight of plaintiff's choice of forum "varies depending on the significance of the contacts between the venue chosen by Plaintiff and the underlying cause of action").

Further, in the Gennari Memorandum, plaintiff argues that defendants have "confess[ed] jurisdiction is proper in Maryland" because their initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1)(A)(i) in the Ohio case named "thirteen individuals. . . purported to have knowledge of the allegations in the Complaint, whom [sic] are associated with [SBD], a Maryland corporation." ECF 14 at 4–5.[11] According to Gennari, this list illustrates a "well-defined and undisputed connection to Maryland." *Id.* at 5.

Although Gennari alleges, as noted, that its performance of the Profit Agreement took place in Maryland and that defendants' tortious conduct was aimed at it in Maryland (ECF 1, ¶¶ 45–49, 58–71), it does not allege that defendants' breach of contract or tortious conduct occurred in Maryland.  Nor does Gennari specifically allege that Wellington or Kundel ever came to Maryland in the course of business.  Indeed, plaintiff complains that "Wellington and Kundel had little to no interaction with the vendors, suppliers and manufacturers of the Restorer project; never met with Jinding. . .and made only one trip to [SBD]."  ECF 1, ¶ 23.  He does not specify where defendants met with SBD.

---

[11] The corporate citizenship of SBD is disputed by the parties.  Plaintiff contends that SBD "is a national corporation whose power tool division is headquartered in Towson, Maryland." ECF 7 at 2.  However, defendants claim that SBD is a Connecticut corporation.  ECF 10-1 at 1.

For his part, Kundel avers that he "did not travel to Maryland for the execution of the [Profit Agreement]." ECF 4-2, ¶ 13. He states: "I executed that Agreement in the State of Ohio." *Id.* Further, he asserts that he "did not travel to Maryland for the execution of the [Agreement]," and that he "executed that agreement in the State of Ohio." *Id.* ¶ 15. And, he claims that the "May 10, 2019 notification of the termination of the [Profit Agreement] was sent via email. [He] did not travel to Maryland to provide this notice." *Id.* ¶ 18.

The parties appear to have been operating in separate states. Therefore, the "relationship between the forum and the cause of action" is therefore not sufficiently strong for the plaintiff's choice of forum to be the dispositive factor in the analysis. *See Bannister*, 843 F. Supp. 2d at 615. Accordingly, I turn to the remaining factors.

### 3.

"Perhaps the most important factor to be considered by a court in passing on a motion to transfer is the convenience of the witnesses." *Cronos Containers, Ltd. v. Amazon Lines, Ltd.*, 121 F. Supp. 2d 461, 466 (D. Md. 2000); *accord Mamani*, 547 F. Supp. 2d at 473; *see also* 15 C. WRIGHT & MILLER, FED. PRACTICE & PROCEDURE § 3851 (4th ed.) ("WRIGHT & MILLER") ("The convenience of witnesses, particularly nonparty witnesses important to the resolution of the case, is often cited as the most significant factor in ruling on a motion to transfer under 28 U.S.C.A. § 1404(a).").

Gennari points to the thirteen individuals named in Wellington's initial disclosures in the Ohio suit it alleges are connected to Maryland. ECF 14 at 4–5; *see* ECF 14-1 at 4–6. It contends that "most of these individuals reside in Maryland and would have to leave the state for the purposes of testifying at trial, should this matter be transferred to Ohio, a severe burden on witnesses that this Court is not accustomed to demanding." *Id.* at 5–6. Additionally, according to

Gennari, "Three witnesses are located in China. . . ." *Id.* at 6. "Five of the remaining witnesses are from Lowes, . . . all of which are located in North Carolina. . . ." *Id.*

Defendants argue that, for many of these potential witnesses who are not in Maryland, "it would not be more convenient for them to travel to Maryland over Ohio, particularly when they must already travel to Ohio to provide testimony in the Ohio Action." ECF 13 at 7. They contend that the testimony potential witnesses would provide in Maryland would be "largely duplicative of the testimony to be elicited in the Ohio Action." *Id.*

Although Gennari contends that many of the individuals named in Wellington's initial disclosures (ECF 14-1 at 4–6) have ties to Maryland or reside in Maryland, the initial disclosures list it references is *from the Ohio action*. Those individuals may already be required to travel to Ohio to testify, and it would certainly be a burden on them to require them to also give testimony in Maryland as well, especially given the overlap of the two suits. It would be far more inconvenient for the non-Maryland witnesses to travel twice — once to Ohio, and once to Maryland — to give largely duplicative testimony. Therefore, convenience of the witnesses weighs heavily in favor of transfer to Ohio.

## 4.

A key factor in assessing a transfer is whether it can be shown "that the plaintiff would not be substantially inconvenienced by a transfer." WRIGHT & MILLER § 3849. Notably, "transfer will be refused if the effect of a change of venue would be merely to shift the inconvenience from one party to the other." *Id.* at 216; *see Pinpoint IT Services, L.L.C. v. Atlas IT Export Corp.*, 812 F. Supp. 2d 710, 721 (E.D. Va. 2011) ("[A] transfer of venue that merely switches the inconvenience from one party to the other generally will be refused.").

Defendants argue that because "Gennari is and will continue to actively litigate the Ohio Action, the inconvenience to Gennari in litigating its affirmative claims in that singular forum is

virtually non-existent.  Gennari must travel to Ohio, but it is already compelled to travel to Ohio by the United States District Court for the Northern District of Ohio."  ECF 13 at 7.  They also contend that "it would be very inconvenient for Wellington to undertake discovery on its affirmative claims in Ohio and then travel to an unrelated forum, Maryland, to permit Gennari to repeat discovery of the same transactions for Gennari to support its claims, particularly when the Ohio Court has retained the claims arising out of these operative facts."  *Id.* at 8.

Plaintiff argues that "any burden Wellington may face by litigating in a forum outside its state of residence is minimal."  ECF 7 at 9.  The same must be true of plaintiff.  *See Hanson v. Denckla*, 357 U.S. 235, 250 (1958) (progress in communication and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome).  Given that the parties are already embroiled in litigation in Ohio over substantially similar issues, transferring this case to Ohio would create no greater inconvenience for the plaintiff.  Therefore, convenience of the parties weighs substantially in favor of transferring the case to the Northern District of Ohio.

### 5.

As indicated, the Court must also consider whether a transfer is in the interest of justice. This factor is "amorphous and somewhat subjective," and allows a court to "consider many things." WRIGHT & MILLER § 3854. The Court must "'weigh the impelling need for efficiency in the administration of our court system against the right of [the plaintiff] to continue the trial in a forum [it chose],'" *Cluck-U*, 2016 WL 9526438, at *4 (quoting *General Tire & Rubber Co. v. Watkins* 373 F.2d 361, 368 (4th Cir. 1967) (alterations in *Cluck-U*).

When, as here, two very similar suits "are pending in different federal courts, 'the case ought to be [consolidated and] tried in the district court in which it was first filed,' other factors being equal." *Cluck-U*, 2016 WL 9526438, at *4 (quoting *Topiwala*, 2012 WL 122411 at *8) (alterations in original). Consolidating cases in this way "'is a rule of sound judicial

administration.'" *Siemens Energy, Inc. v. CSX Transp., Inc.*, No. RDB-15-1072, 2016 WL

1059261, at *6 (D. Md. Mar. 17, 2016) (quoting *Ellicott Mach. Corp. v. Modern Welding Co.,*

*Inc.*, 502 F.2d 178, 181 (4th Cir. 1974)).  Courts have called this a "first-to-file" rule:

> The first-to-file rule "requires substantially overlapping cases filed in separate fora
> to be resolved in the forum where the initial case is filed unless a balance of
> convenience favors the second action." *Smart Technologies, Inc. v. Polyvision
> Corp.*, 3:04–cv–545, 2004 WL 6047007 (E.D. Va. Oct. 20, 2004) (citing *Ellicott*,
> 502 F.2d at 180). Due to its importance in ensuring judicial efficiency, consistency,
> and comity, courts have noted that the rule "should not be disregarded lightly."
> *Neuralstem, Inc. v. Stemcells, Inc.*, 573 F. Supp. 2d 888, 900 (D. Md. 2008)
> (internal quotation marks omitted); *see also Rite Way Crack Repair, LLC v.
> Guardian Crack Repair, LLC*, WMN–09–1207 ..., 2009 WL 2923085 (D. Md. Sept.
> 10, 2009) (noting that the underlying principles of the first-to-file rule include the
> conservation of judicial resources and the parties' time and money, and to prevent
> the possibility of reaching conflicting results).

*Siemens Energy, Inc. v. CSX Transp., Inc.*, No. RDB-15-1072, 2016 WL 1059261, at *6 (D. Md.

Mar. 17, 2016) (quoting *Fisher v. Rite Aid Corp.*, No. RDB-09-1909, 2010 WL 2332101, at *2 (D.

Md. June 8, 2010)).

Wellington's suit was filed in Ohio before Gennari filed suit in Maryland.  Both actions

arise out of the same nucleus of facts, the same business relationship, and involve the same parties.

Indeed, the lawsuits are essentially mirror-images of each other: "both parties allege that the other

party breached the [Profit Agreement] for the Restorer, giving rise to a claim for damages."  ECF

13 at 9.

When two substantially overlapping cases exist in different venues, "[t]he interest of justice

weighs heavily in favor of transfer ... because litigation of related claims in the same tribunal may

facilitate efficient pretrial proceedings and discovery," as the transferee court already has gained

"familiarity with the facts of the case and the applicable law," and "also because it avoids

inconsistent results" and "duplicative litigation." *D2L Ltd.*, 671 F. Supp. 2d at 783–84; *see General

Tire & Rubber Co. v. Watkins*, 373 F.2d 361, 368 (4th Cir. 1967) ("Certainly the simultaneous trial

of two suits in different circuits involving a number of identical questions of fact and law would result in a useless waste of judicial time and energy."); *In re Michaels Stores, Inc., Pin Pad Litig.*, 844 F. Supp. 2d 1368, 1368 (U.S. Jud. Pan. Mult. Lit. 2012) ("[T]ransfer pursuant to Section 1404 is available to minimize any possibility of duplicative discovery among these actions."). Transfer and consolidation in Ohio "would be in the interests of justice because it would be cost-effective and also conserve judicial resources." ECF 13 at 8.

Defendants also observe that because this suit and the suit in Ohio arise out of the Profit Agreement, there is a "risk of inconsistent rulings," in the absence of transfer. *Id.* The potential inconsistency is to be avoided.

It is also noteworthy that the Agreement contains a choice-of-law provision, in which the parties agreed to be governed by Ohio law. ECF 1-2 at 3. In contrast, the Profit Agreement contained no choice-of-law provision. *See* ECF 1-1. Although neither agreement contained a forum selection clause, and although the presence or absence of a choice-of-law clause is not dispositive, the fact that the parties agreed in one instance to apply Ohio law counsels slightly in favor of having an Ohio tribunal resolve the parties' dispute.

### III.    Conclusion

As noted, Wellington first filed suit in a state court in Ohio. Gennari removed the case to the federal court in the Northern District of Ohio. That case was initiated before Gennari filed suit in Maryland. And, both cases arise out of the same set of operative facts, including the Profit Agreement, and involve the same parties. The plaintiff here has been found to be subject to suit in Ohio.

This Court places great weight on its interest in avoiding duplicative litigation and seeks to avoid the possibility of inconsistent results. Litigation of the case at one time and in one court

will avoid inconvenience to the witnesses, without further inconveniencing the parties. Therefore, the balance of factors strongly supports the transfer of this case to the Northern District of Ohio.

For the foregoing reasons, I shall transfer this case to the Northern District of Ohio, and deny the Motion as moot. A separate Order follows, consistent with this Memorandum Opinion.

Date: December 13, 2019

_____/s/_____
Ellen L. Hollander
United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

GENNARI CONSULTING, INC.,

    *Plaintiff*,

v.

    Civil Action No. ELH-19-1851

WELLINGTON CORP., LLC, *et al.*,

    *Defendants*.

**ORDER**

For the reasons set forth in the accompanying Memorandum Opinion, it is this 13th day of

December, 2019, by the United States District Court for the District of Maryland, **ORDERED**:

1) The Clerk is ordered to transfer this case to the Northern District of Ohio;

2) The Motion to Dismiss (ECF 4) is **DENIED** as moot; and

3) The CLERK is directed to CLOSE this case.

/s/
Ellen L. Hollander
United States District Judge